UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT M. VANCE,

                                    Plaintiffs,

                                                              6:18-cv-0736
v.                                                            (GTS/TWD)

ROBIN HALAQUIST, CRAIG BIONDI, DAVID
McCABE, JEFFREY ALAMASIAN, KIM DODD,
MICHAEL McGEE, MATT THEODORE, RUDY
BARRINGER, JANINE O'HARA, ALICE
GONZALEZ, KATHY OSWALK, and DAN
FENTON,

                                    Defendants.
_____

APPEARANCES:

ROBERT M. VANCE
Plaintiff, *pro se*
3 West Street
Apt. A, Rear Apartment
Oneonta, NY 13820

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### ORDER AND REPORT-RECOMMENDATION

        The Clerk has sent this *pro se* complaint together with an application to proceed *in forma*

*pauperis* ("IFP application") to the Court for review.  (Dkt. Nos. 1, 2.)  The instant action,

entitled *Vance v. Halaquist, et al.*, No. 6:18-cv-0736 (GTS/TWD) ("*Vance III*"), is the third in a

series of lawsuits Plaintiff Robert M. Vance, a hearing impaired individual, has filed in this

District alleging employment discrimination based on his disability in violation of the Americans

with Americans with Disabilities Act of 1990, as amended 42 U.S.C. § 12111, *et seq*. ("ADA").

*See Vance v. ACCO Brands USA, LLC*, No. 3:11-CV-1443 (NAM/DEP) ("*Vance I*"); *Vance v.*

*ACCO Brands USA, LLC*, No. 6:17-CV-0957 (GTS/TWD) ("*Vance II*").  Defendants are Robin

Halaquist, Craig Biondi, David McCabe, Jeffrey Alamasian, Kim Dodd, Michael McGee, Matt

Theodore, Rudy Barringer, Janine O'Hara, Alice Gonzalez, Kathy Oswald, and Dan Fenton, all

of whom are alleged to be employees of Plaintiff's former employer, ACCO Brands Corp.

("ACCO"). (*Vance III*, Dkt. No. 1.) Liberally construed, Plaintiff alleges violation of the ADA

based upon a hearing impairment, breach of a collective bargaining agreement, violation of

discharge and attendance guideline agreements, wrongful termination, hostile work environment,

defamation, and harassment. *Id*.

For reasons explained below, Plaintiff's IFP application is granted for purposes of filing

only and the Court recommends *sua sponte* dismissing this action with prejudice for failure to

state a claim upon which relief may be granted.

## I.     IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee

for commencing an action. 28 U.S.C. § 1915(a)(1). After reviewing Plaintiff's IFP application,

the Court finds that he meets this standard. Therefore, Plaintiffs' IFP Application (Dkt. No. 2) is

granted.

## II.    LEGAL STANDARDS FOR INITIAL REVIEW

Even when a plaintiff meets the financial criteria for in forma pauperis, 28 U.S.C. §

1915(e) directs that when a plaintiff proceeds in forma pauperis, "the court shall dismiss the case

at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to

state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant

who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the

complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325

(1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied*, 513 U.S. 836 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* (internal quotation marks and citation omitted).

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without granting leave to amend at least once when a liberal reading of the complaint gives any

indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III.    RELEVANT BACKGROUND[1]

### A.    Plaintiff's First ADA Lawsuit Against ACCO

On December 9, 2011, Plaintiff, represented by counsel, commenced an employment action against ACCO alleging violation of the ADA. (*Vance I*, Dkt. No. 1.) In his second amended complaint in that action, Plaintiff, who was born with a high degree of neural hearing loss and a corresponding speech impediment, alleged he began working at ACCO's Sydney, New York facility in July 2004 as a third shift picker/packer in the shipping department. (*Vance I*, Dkt. No. 47 at ¶¶ 5, 12, 16.) Plaintiff alleged that ACCO subjected him to disparate treatment and a hostile work environment because of his hearing impairment, retaliated against for complaining about such conduct, and ultimately terminated his employment in or about December 2011 in retaliation for his complaints. *Id*. at ¶¶ 3, 60-61.

Plaintiff filed his first ADA discrimination complaint against ACCO with the Equal Employment Opportunity Commission ("EEOC") on March 10, 2008, and a settlement agreement was reached in a mediation and signed on July 7, 2008. *Id*. at ¶¶ 40-44. Plaintiff alleged in his second amended complaint in *Vance I* that ACCO maintained the exact same course of action continuing to discriminate against him by failing to rotate him to different positions, failing to offer adequate training, and failing to comply with the terms of the mediation

---

[1] For a detailed summary of *Vance I* and *Vance II*, reference is made to this Court's November 1, 2017, Report-Recommendation in *Vance II* (Dkt. No. 18).

4

agreement.  *Id*. at ¶¶ 50-51.  In addition, Plaintiff claimed he was the victim of harassment and

an escalating course of retaliation because he had filed the discrimination complaint with the

EEOC, creating a hostile work environment.  *Id*. at ¶¶ 50, 53.  The retaliation included

continuous "write-ups" for bogus alleged disciplinary violations.  *Id*. at ¶ 52.

Plaintiff filed a second EEOC complaint on February 13, 2009, because ACCO had

ignored the terms of the mediation agreement and the discrimination against him had intensified.

*Id*. at ¶ 54.  The EEOC issued a right to sue letter on September 13, 2011.  *Id*. at ¶ 58.  Plaintiff

alleged that his employment was terminated without cause on June 21, 2013, in violation of the

ACCO collective bargaining agreement, and solely in retaliation for his discrimination

complaints.  *Id*. at ¶ 61.

By Memorandum-Decision and Order, filed March 31, 2015, the Hon. Norman A.

Mordue, Senior U.S. District Judge, granted ACCO summary judgment.  (*Vance I*, Dkt. No. 83.)

The District Court specifically addressed Plaintiff's ADA violation claims, including disparate

treatment, retaliation, including his allegedly retaliatory termination, and hostile work

environment claims, and found the Defendant entitled to judgment as a matter of law.  *Id*.

Judgment was entered in favor of ACCO.  (*Vance I*, Dkt. No. 84.)  Plaintiff appealed to the

Second Circuit on April 29, 2015.  (*Vance I*, Dkt. No. 85.)  Plaintiff's motion to vacate the

Second Circuit's September 2, 2015, Order dismissing his appeal was denied on September 7,

2016.  (Court of Appeals, 2nd Cir., Docket No. 15-1443, Nos. 45, 62.)

### B.    Plaintiff's Second ADA Lawsuit Against ACCO

On August 30, 2017, proceeding *pro se*, Plaintiff filed a second ADA employment

discrimination lawsuit against ACCO.  (*Vance II*, Dkt. Nos. 1, 17.)  In *Vance II*, Plaintiff's

original complaint alleged:

> failure to promote, denial of participation in programs, failure to
> make alterations to accommodate a disability, retaliation, violation
> of an existing mediation agreement with EEOC, violation of
> company and union CBA (Collective Bargaining Agreement) on
> employment discharge, Hostile work environment, Wrongful
> Termination, failure to notify the union on discharge and waived
> rights for representation as a union paying member, and
> defamation of character bogus wrongful termination with
> assumption of committing future violence in the workplace.

(*Vance II*, Dkt. No. 1 at ¶ 5.)  In his "amended complaint," Plaintiff described *Vance II* as being

brought pursuant to:

> Americans with Disabilities Act, 42 U.S.C. 1201 et seq., Breach of
> Contract with EECO (sic), CWA, CBA (collective bargaining
> agreements), Violation of Discharge agreement, Violation of
> Attendance Guideline agreement, Hostile Environment,
> Retaliation, Wrongful Termination, Slander, Defamation of
> Character and Harassment, and pursuant to the Constitution of the
> United States of America, along with the New York State Human
> Rights Law, and other federal and state anti-discrimination laws
> and policies in response to the defendants' discrimination based
> upon a disability, union representation, and the failure to
> acommodate (sic) the same.

(*Vance II*, Dkt. No. 17 at 2-3.)

Upon initial review of *Vance II*, conducted pursuant to 28 U.S.C. § 1915(e), this Court

found that the claims alleged by Plaintiff in his complaint, as supplemented by his "amended

complaint," were barred under the doctrine of *res judicata*.  (*Vance II*, Dkt. No. 18.[2])  As such,

this Court recommended that Plaintiff's complaint, as supplemented by his amended complaint,

be *sua sponte* dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. §

1915(e)(2)(B)(ii).  *Id*.

---

[2] For reasons explained in *Vance II*, Plaintiff's complaint and amended complaint were
considered as a single pleading for purposes of initial review.  (*Vance II*, Dkt. No. 18 at 1 n.1.)

By Decision and Order filed April 2, 2018, the Hon. Glenn T. Suddaby, Chief U.S.

District Judge, accepted and adopted the Report-Recommendation in its entirety.  (*Vance II*, Dkt.

No. 20.)  Further, because the defects in Plaintiff's pleading were substantive, such that

amendment would not likely cure them, Plaintiff was not afforded an opportunity to amend prior

to the dismissal.  *Id.*  Judgment in favor of ACCO was entered April 2, 2018.  (*Vance II*, Dkt.

No. 21.)  Plaintiff filed a notice of appeal to the Second Circuit on April 25, 2018.  (*Vance II*,

Dkt. No. 22.)  On June 6, 2018, ACCO filed a motion for summary affirmance.  (Court of

Appeals, 2nd Cir., Docket No. 18-1258, No. 23.)

### C.     Plaintiff's Complaint Now Under Initial Review

Plaintiff commenced the instant action on June 25, 2018.  (*Vance III*, Dkt. No. 1.[3])

Named as Defendants are Halaquist, Biondi, McCabe, Alamasian, Dodd, McGee, and Fenton,

who are identified as "Human Resource," "Supervisors" and "Management" at ACCO, and

---

[3] Plaintiff's complaint, which is prepared on a pre-printed form generated for use in actions brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"), alleges employment discrimination based on "other" and handwritten "disability, ADA violation."  (*Vance III*, Dkt. No. 1 at 3.)  A plain reading demonstrates Plaintiff alleges disability discrimination.  Indeed, Plaintiff makes no allegation that he was discriminated against because of his race, color, religion, sex, or his national origin.  Thus, even liberally construed, Plaintiff's claims clearly cannot be pursued under Title VII.  *See Rebele v. Potter*, 818 F. Supp. 2d 534, 537 (E.D.N.Y. 2011) ("Discrimination on the basis of disability . . . does not fall within the ambit of Title VII."); *Muszak v. Sears, Roebuck & Co.*, 63 F. Supp. 2d 292, 300 (W.D.N.Y. 1999) ("Title VII does not protect a request for an accommodation on the basis of an alleged disability").  Additionally, individuals are not subject to liability" under Title VII. *Patterson v. Cty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004).

Further, even if Plaintiff could conceivably allege membership in a protected class under Title VII against ACCO, for the reasons explained in *Vance II*, such claim would also be barred under the doctrine of *res judicata*.  (*See Vance II*, Dkt. Nos. 18, 20.)  Indeed, "claims premised upon new legal theories do not amount to a new cause of action so as to defeat the application of *res judicata*."  *Guess v. Jahromi*, No. 6:17-CV-6121(MAT), 2017 WL 1063474, at *2-3 (W.D.N.Y. Mar. 21, 2017) (*sua sponte* dismissing compliant as barred by *res judicata* where "[n]othing prevented plaintiff from bringing a Title VII claim along with the ADA claim [in his first action], which claim would have centered on the same facts.").

Gonzalez, O'Hara, Theodore, Barringer, Oswald, who are identified as "Management," "Union Official," and "Employees," at ACCO. *Id*. at 1-2.[4]

In Count One, Plaintiff alleges he was subjected to discrimination, harassment, and a hostile work environment from 2004 through 2013, because of his severe hearing disability. *Id*. at 5. Defendants refused "to accommodate [his] hearing disability" and he was wrongfully terminated on June 21, 2013. *Id*.

In Count Two, Plaintiff alleges that from 2007 through 2013, he was "subjected to backlash of retaliatory behavior" from co-workers, supervisors, human resources officials, and general manager because he filed numerous internal grievances, union grievances, and charges with the EEOC. *Id*. Plaintiff also alleges, that "[t]he level of disregard for my physical disability became willfully neglected when the terms of an EEOC mediation agreement was violated by the listed individuals in this suit." *Id*. at 5.

In Count Three, Plaintiff alleges "blatant disregard for internal company process and union (CBA) collective bargaining agreement by wrongfully terminating my employment on June 21, 2013." *Id*. Plaintiff further claims:

> Bogus and Fabrication claims by the individual within the company to claim that the Plaintiff may someday bring a gun to work to commit future violence for reason to Plaintiff termination of employment. Individuals listed in this suit refuse Plaintiff union representation and human resource department refuse to get a statement from Plaintiff on the incident within the company. Individuals in this suit waived Plaintiff rights to representation within company policy and Union (CBA) agreement for representation and discharge agreements.

*Id*. (unaltered text; errors in original.)

---

[4] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

Plaintiff states, "all 3 causes of actions applies to the 12 Defendants that are listed." *Id*. at 4. Attached to his complaint are various filings related to his two EEOC complaints. *See id*. at 7-14. Plaintiff seeks $100,000 per Defendant, per cause of action, totaling $3.6 million. *Id*. at 15. For a complete statement, reference is made to the complaint.

## VI.    DISCUSSION

### A.    Individual Liability

Plaintiff attempts to sue twelve individuals, all of whom are described employees of his former employer under the ADA. (*Vance III*, Dkt. No. 1.)  However, "it is well-settled in the Second Circuit that individual employees, including supervisors, cannot be held personally liable for violations of the ADA." *Garibaldi v. Anixter, Inc.*, 407 F. Supp. 2d 449, 450 (W.D.N.Y. 2006) (citing *Bliss v. Rochester City School Dist.*, 196 F. Supp. 2d 314, 339 (W.D.N.Y. 2002)); *see also Coleman v. Engle*, No. 5:16-cv-00833 (MAD/DEP), 2017 WL 752178, at *4 (N.D.N.Y. Feb. 27, 2017) (*sua sponte* dismissing ADA claims against individuals because the "ADA does not provide for individual liability.") (citations omitted).  Accordingly, the Court recommends that Plaintiff's complaint, which names only individuals as Defendants, be dismissed with prejudice.

### B.    Whether to Permit Amendment

Ordinarily, the Court would recommend granting leave to amend to name the proper defendant in this action. *See, e.g.*, *Arcuri v. Schoch*, No. 6:15-cv-0798 (DNH/TWD), 2015 WL 5652336, at *6 (N.D.N.Y. Sept. 24, 2015) (recommending the plaintiff be granted leave to amend to name her former employer, against whom she filed her EEOC complaint, as a defendant in the ADA action); *see also Berger v. NYS Office for People With Developmental Disabilities*, No. 6:16-CV-1277 (LEK/ATB), 2016 WL 11265988, at *3 (N.D.N.Y. Nov. 8,

2016) (finding because the ADA does not provide for individual liability, the only proper defendant would be the plaintiff's employer).

An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

Here, Plaintiff has already filed two unsuccessful lawsuits against ACCO for employment discrimination in this District. *See Vance I* and *Vance II*. Further, the factual allegations in *Vance I*, *Vance II*, and *Vance III* are almost identical. *See Vance I*, Dkt. No. 47, *Vance II*, Dkt. Nos. 1, 17, *Vance III*, Dkt. No. 1. Significantly, in *Vance II*, Plaintiff's complaint, as supplemented by his amended complaint, was ***sua sponte* <u>DISMISSED</u> with prejudice** for failure to state a claim pursuant to 28 U.S.C. § 1915(e). (*Vance II*, Dkt. No. 20 (emphasis in original).) Therefore, and for reasons explained in *Vance II*, the problem with Plaintiff's causes of action is substantive, such that better pleading will not cure it. Therefore, the Court recommends dismissal without leave to amend.

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiffs' IFP Application (Dkt. No. 2) is **<u>GRANTED</u> for purposes of filing only**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be ***sua sponte* <u>DISMISSED</u> with prejudice and without leave to amend** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii); and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[5]  Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: July 18, 2018
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[5]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

11

2017 WL 752178
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Rochelle Coleman, Plaintiff,

v.

Paula Engle, Sarah Merrick, Onondaga County of
Social Services Commissioner, Robert Antunacci,
Onondaga County Comptroller, Defendants.

5:16-cv-00833 (MAD/DEP)
|
Signed 02/27/2017

**Attorneys and Law Firms**

ROCHELLE COLEMAN, 231 Lilac Street, Syracuse,
New York 13208, Plaintiff Pro Se.

**ORDER**

Mae A. D'Agostino U.S., District Judge

**\*1** On July 8, 2016, *pro se* Plaintiff Rochelle Coleman
filed three civil rights complaints as one action against
Defendants Paula Engle, an attorney, Sarah Merrick,
the Onondaga County Social Services Commissioner
and Comptroller, and Robert Antunacci, the Onondaga
County Comptroller. *See* Dkt. Nos. 1, 1-1, and 1-2.
Plaintiff asserts claims pursuant to 42 U.S.C. § 1983
("section 1983"), Title VII of the Civil Rights Act of 1964
("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Americans
with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*
*See id.*

On July 29, 2016, Magistrate Judge Peebles issued a
Report, Recommendation and Order granting Plaintiff's
application to proceed *in forma pauperis* ("IFP") while
denying Plaintiff's motion for appointment of counsel. *See*
Dkt. No. 6 at 18. After review, Magistrate Judge Peebles
recommended the Court dismiss all three of Plaintiff's
complaints with prejudice due to her failure to state
a claim. *See id.* at 19. Currently before the Court is
Magistrate Judge Peebles' Report, Recommendation and
Order.

When a plaintiff seeks to proceed IFP, "the court shall
dismiss the case at any time if the court determines that ...

the action or appeal (i) is frivolous or malicious; (ii) fails
to state a claim on which relief may be granted; or (iii)
seeks monetary relief against a defendant who is immune
from such relief." 28 U.S.C. § 1915(e)(2)(B). In making
this determination, " 'the court has the duty to show
liberality towards pro se litigants,' however, 'there is a
responsibility on the court to determine that a claim has
some arguable basis in law before permitting a plaintiff to
proceed with an action *in forma pauperis.*' " *Griffin v. Doe*,
71 F. Supp. 3d 306, 311 (N.D.N.Y. 2014) (citing *Moreman
v. Douglas*, 848 F. Supp. 332, 333-334 (N.D.N.Y. 1994)
(internal citations omitted)); *see also Thomas v. Scully*, 943
F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that
a district court has the power to dismiss a complaint *sua
sponte* if the complaint is frivolous).

When reviewing a complaint under 28 U.S.C. § 1915(e),
courts are guided by the applicable requirements of the
Federal Rules of Civil Procedure. Rule 8(a) of the Federal
Rules of Civil Procedure provides that a pleading must
contain "a short and plain statement of the claim showing
that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)
(2). While Rule 8(a) "does not require 'detailed factual
allegations,' ... it demands more than an unadorned"
recitation of the alleged misconduct. *Ashcroft v. Iqbal*, 556
U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 555 (2007)) (other citations omitted).

To survive dismissal for failure to state a claim, a party
need only present a claim that is "plausible on its face."
*Twombly*, 550 U.S. at 570. "A claim has facial plausibility
when the plaintiff pleads factual content that allows the
court to draw the reasonable inference that the defendant
is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678
(citation omitted). In determining whether a complaint
states a claim upon which relief may be granted, "the court
must accept the material facts alleged in the complaint as
true and construe all reasonable inferences in the plaintiff's
favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.
1994) (citation omitted). However, "the tenet that a court
must accept as true all of the allegations contained in a
complaint is inapplicable to legal conclusions. Threadbare
recitals of the elements of a cause of action, supported
by mere conclusory statements, do not suffice." *Iqbal*, 556
U.S. at 678 (citation omitted).

**\*2** Neither party objected to Magistrate Judge Peebles'
Report, Recommendation, and Order. As a general
matter, when a party files specific objections to a

magistrate judge's report and recommendation, the district court "make[s] a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, when a party files " '[g]eneral or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge,' " the court reviews those recommendations " 'for clear error.' " *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 187 (E.D.N.Y. 2015) (quotation omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

A litigant's failure to file objections to a magistrate judge's report and recommendation, even when that litigant is proceeding *pro se*, waives any challenge to the report on appeal. *See Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point") (citation omitted). A *pro se* litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive her right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and former 6(e) of the Federal Rules of Civil Procedure).

In her section 1983 complaint, Plaintiff alleges that her benefits were stolen, accuses "county workers" of welfare fraud and asserts that after she made her accusations, Defendants contributed to the wrongful removal of her children from her custody. *See* Dkt. No. 1 at 3; *see also* Dkt. No. 6 at 3. Specifically, Plaintiff claims that Defendants ignored her complaints, conspired to cover up the fraud, and conspired to remove Plaintiff's children from her custody. *See* Dkt. No. 1 at 3. Liberally construed, Plaintiff's section 1983 complaint includes claims for retaliation, violation of due process rights, unlawful seizure, and conspiracy to deprive Plaintiff of constitutional rights. *See* Dkt. No. 6 at 9.

A section 1983 retaliation claim exists when a state actor takes adverse action against a plaintiff motivated by the plaintiff's exercise of a constitutional right, such as free speech under the First Amendment. *See Friedl v. City of N. Y.*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws") (citations omitted). To succeed on a section 1983 claim for retaliatory conduct, a plaintiff must demonstrate that (1) she engaged in protected conduct; (2) the defendant took adverse action against her; and (3) there was a causal connection between the protected activity and the adverse action—in other words, that the protected conduct was a "substantial or motivating factor" in the government official's decision to take action against the plaintiff. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Garrett v. Reynolds*, No. 9:99-cv-2065, 2003 WL 22299359, *4 (N.D.N.Y. Oct. 3, 2003).

**\*3** Here, in connection with Plaintiff's section 1983 claim for retaliatory conduct, the only identified adverse action is the removal of her children. *See* Dkt. No. 1 at 3. As Magistrate Judge Peebles correctly found, Plaintiff has failed to allege any facts to plausibly suggest that Defendants were involved in the decision to remove Plaintiff's children from her custody, or that this alleged adverse action was motivated by the Plaintiff's complaints. *See* Dkt. No. 6 at 10.

As to the second claim in her section 1983 complaint, Magistrate Judge Peebles correctly determined that Plaintiff failed to state a claim for violation of due process under the Fourteenth Amendment or unlawful seizure under the Fourth Amendment. *See id.* at 10-11. Again, Plaintiff alleges nothing that "plausibly suggest[s] that any of the defendants were personally involved in any respect with the removal of [P]laintiff's children from her custody." *See id.* at 11; *see also Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation") (citations omitted).

Lastly, Magistrate Judge Peebles correctly determined that Plaintiff's section 1983 conspiracy claim failed to

state a claim against Defendants. *See* Dkt. No. 6 at 11-12. Plaintiff failed to provide any details "relative to defendants' alleged involvement in the conspiratorial conduct" and she "failed to allege any of the defendants entered into an agreement with anyone to deprive [P]laintiff of her constitutional rights." *See id.* at 12. To sustain a conspiracy claim under 42 U.S.C. § 1983, "a plaintiff must demonstrate that a defendant 'acted in a willful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights ... secured by the Constitution or the federal courts.' " *Krebs v. New York State Division of Parole*, No. 9:08-cv-0255, 2009 WL 2567779, *13 (N.D.N.Y. Aug. 17, 2009) (quoting *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995)). Finally, Magistrate Judge Peebles also correctly determined that all claims raised in Plaintiff's section 1983 complaint are also subject to dismissal pursuant to the *Rooker-Feldman* doctrine. *See Torres v. Family Court/Admin. for Children's Servs.*, No. 01 Civ. 4351, 2001 WL 1111510, *2 (S.D.N.Y. Sept. 20, 2001) (citations omitted); *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003). Therefore, the Court dismisses Plaintiff's section 1983 complaint with prejudice.

Plaintiff's Title VII complaint asserts a claim for employment discrimination on the basis of her race or color, national origin, education, income, and disability. *See* Dkt. No. 1-1 at 2. Plaintiff alleges that Defendants failed to investigate her report of fraud. *See id.* at 3. Plaintiff also accuses the Commissioner of providing a complaint she filed against a family court judge to that judge in retaliation for unspecified conduct. *See id.* at 4. Magistrate Judge Peebles recommends the Court dismiss Plaintiff's Title VII complaint with prejudice. *See* Dkt. No. 6 at 15. Plaintiff, using a form complaint designed for pleading employment discrimination, "allege[d] that the [D]efendants discriminated against her by failing to investigate her reports of fraud." As Magistrate Judge Peebles correctly determined, these allegations do not state an employment discrimination claim under Title VII. *See Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005) (reciting the elements of a Title VII claim). Additionally, " 'individuals are not subject to liability under Title VII.' " *Sassaman v. Gamache*, 566 F.3d 307, 315 (2d Cir. 2009) (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004)) (other quotations omitted). Moreover, "Title VII plaintiffs must receive a 'right-to-sue' letter from the EEOC before filing suit in court" which Plaintiff failed to attach to her complaint.

*See Hodge v. N.Y. Coll. of Podiatric Med.*, 157 F.3d 164, 168 (2d Cir. 1998) (citing 42 U.S.C. § 2000e-5(f)(1)) (other citations omitted). Therefore, the Court dismisses Plaintiff's Title VII complaint with prejudice.

**\*4** Plaintiff's ADA complaint lists the following disabilities: PTSD, insomnia, depression, anxiety, arthritis, brain surgery on November 10, 2015, paralyzed right hand, lung, heart, and brain cancer, migraines and heart palpitations. *See* Dkt. No. 1-2 at 3. In her complaint, she alleges that Defendant Engle "tried to cover up crimes committed against [her] family" and "tries to work both sides" which "is a conflict." *Id.* at 4. Plaintiff alleges Defendant Merrick, "ignored evidence submitted, retaliated against and never wrote [Coleman] to address [her] issues." *Id.* Lastly, Plaintiff alleges Defendant Antonacci "ignored [Coleman's] complaints after he said he would investigate [her] reports" and "yelled at [her] for emailing his boss." *Id.* (emphasis omitted).

Magistrate Judge Peebles recommends dismissal of Plaintiff's ADA complaint with prejudice. *See* Dkt. No. 6 at 16. The ADA provides for protection against retaliation based upon disability. *See* 42 U.S.C. § 12101 *et seq.* The anti-retaliation provision contained in Title V provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). As Magistrate Judge Peebles correctly determined, Plaintiff failed to allege any facts as to how she was retaliated against by reason of her disability. Instead, Plaintiff simply alleges that Defendants ignored her complaints or, in the case of Defendant Engle, "cover[ed] up crimes committed against [P]laintiff's family." Such allegations are insufficient to support an ADA claim. Additionally, "[t]he ADA does not provide for individual liability." *Hodges v. Wright*, No. 9:10-cv-0531, 2011 WL 5554866, *8 (N.D.N.Y. Sept. 29, 2011) (citing *Herzog v. McLane Northeast, Inc.*, 999 F. Supp. 274, 276 (N.D.N.Y. 1998)). Therefore, the Court dismisses Plaintiff's ADA complaint with prejudice.

Magistrate Judge Peebles also correctly determined that Plaintiff's complaints should be dismissed with prejudice. Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at

least once " 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires"); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where the court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). As the Second Circuit explained, "[w]here it appears that granting leave to amend is unlikely to be productive ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted). Although courts generally permit a *pro se* litigant leave to amend at least once, the Court finds that amendment is inappropriate in this case. As Magistrate Judge Peebles explained, Plaintiff's Title VII and ADA complaints cannot proceed because the statutes do not permit suits against defendants in their individual capacities. Moreover, amendment would be futile as to Plaintiff's section 1983 claims because they depend on the propriety of the removal of Plaintiff's children from her custody and, therefore, are barred by the *Rooker-Feldman* doctrine. *See id.* As a result, Plaintiff's claims in all three complaints are dismissed with prejudice.

**\*5** After carefully reviewing Plaintiff's submissions, Magistrate Judge Peebles' July 29, 2016 Report, Recommendation and Order, the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Peebles' Report, Recommendation and Order (Dkt. No. 6) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's complaints are **DISMISSED with prejudice**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2017 WL 752178

---

**End of Document**                 © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 5652336
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Susan M. ARCURI, Plaintiff,

v.

Major Kevin SCHOCH, Bettina Carmen, Defendants.

No. 6:15–cv–0798 (DNH/TWD).
|
Signed Sept. 24, 2015.

**Attorneys and Law Firms**

Susan M. Arcuri, Utica, NY, pro se.

### DECISION and ORDER

DAVID N. HURD, District Judge.

**\*1** Pro se plaintiff Susan M. Arcuri brought this action
alleging violations of the Americans with Disabilities
Act ("ADA"), 42 U.S.C. § 12101. On July 2, 2015,
the Honorable Thérèse Wiley Dancks, United States
Magistrate Judge, advised by Report–Recommendation
that plaintiff's complaint be dismissed without prejudice
to submit an amended complaint. No objections to
the Report–Recommendation were filed. As discussed
in the ReportRecommendation, if plaintiff wishes
to amended complaint, such complaint shall comply with the
requirements of Federal Rule of Civil Procedure 8.

Based upon a de novo review of the portions of the
Report–Recommendation, the Report–Recommendation
is accepted in whole. *See* 28 U.S.C. § 636(b)(1).

Therefore, it is ORDERED that:

1. Plaintiff's complaint in this action is **DISMISSED,** in its
entirety, with leave to amend within thirty (30) days of the
date of this Decision and Order. Plaintiff is reminded that
any amended complaint will replace her prior complaint
in its entirety;

2. In the event plaintiff fails to file an amended complaint
within thirty (30) days of the date of this Decision and
Order, this case will be closed and judgment entered
accordingly without further order; and

3. The Clerk serve a copy of this Decision and Order upon
plaintiff in accordance with the Local Rules.

IT IS SO ORDERED.

### ORDER AND REPORT AND RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge.

The Clerk has sent to the Court for review the *pro
se* complaint in this employment discrimination action
pursuant to the Americans with Disabilities Act ("ADA"),
42 U.S.C. § 12101, *et seq.,* as amended, brought
against Defendants Major Kevin Schoch ("Schoch"),
Director of the Salvation Army Adult Rehabilitation
Center in Syracuse, New York, and Bettina Carmen
("Carmen"), Regional Store Manager Salvation Army
Adult Rehabilitation Thrift Store, (Dkt. No. 1.) Also
before the Court are Plaintiff's application for leave to
proceed *in forma pauperis* ("IFP application") (Dkt. No.
2), and motion for appointment of counsel. (Dkt. No. 3.)

### I. IFP APPLICATION

A court may grant *in forma pauperis* status if a party
"is unable to pay" the standard fee for commencing an
action. 28 U.S.C. § 1915(a)(1). After reviewing Plaintiff's
IFP application, the Court finds that Plaintiff meets this
standard. Therefore, Plaintiff's IFP application (Dkt. No.
2) is granted.

### II. LEGAL STANDARDS FOR INITIAL REVIEW

Even when a plaintiff meets the financial criteria for *in
forma pauperis,* 28 U.S.C. § 1915(e) directs that when
a plaintiff proceeds *in forma pauperis,* "the court shall
dismiss the case at any time if the court determines that ...
the action ... (i) is frivolous or malicious; (ii) fails to state
a claim on which relief may be granted; or (iii) seeks
monetary relief against a defendant who is immune from
such relief." 28 U.S.C. § 1915(e)(2) (B)(i)-(iii).

**\*2** In determining whether an action is frivolous, the
court must look to see whether the complaint lacks
an arguable basis either in law or in fact. *Neitzke v.
Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d
338 (1989). "An action is frivolous when either: (1) the

factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy, or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully,* 943 F.2d 259, 260 (2d Cir.1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se,* the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank,*

171 F.3d 794, 795 (2d Cir.1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000).

## III. PLAINTIFF'S COMPLAINT

**\*3** Plaintiff alleges that Defendants Schoch and Carmen discriminated and retaliated against her and created a hostile work environment in violation of the ADA. (Dkt. No. 1 at ¶¶ 6–7.) The body of Plaintiff's complaint is devoid of factual allegations and refers the reader instead to attachments to the complaint, including a statement submitted by her in support of her U.S. Equal Employment Opportunity Commission ("EEOC") complaint. *Id.* at 8–9.

According to the March 25, 2014, statement, Plaintiff was hired by the Salvation Army to fill the vacancy of Manager at the Salvation Army Adult Rehabilitation Thrift Store in Ilion, New York ("Ilion Thrift Store"). *Id.* at 6. Plaintiff was engaged in training for the position from March 10, 2014, to March 15, 2014, at the Rome, New York Thrift Store ("Rome Thrift Store"). Her training was done under the supervision of Defendant Carmen and Rome Thrift Store on-site manager Cassandra Witzigman ("Witzigman"). *Id.*

While training at the Rome Thrift Store, Plaintiff worked with Witzigman, Assistant Store Manager, Christopher Vetter ("Vetter"), Senior Sales Associate, Brian Harrer ("Harrer"), and other subordinates, under the supervision of Carmen. *Id.* Plaintiff spent the first day of training, March 10, 2014, with Witzigman completing tasks on an orientation process list, discussing policies and procedures, and touring the store and meeting employees with Vetter. On the second day, March 11, 2014, Plaintiff was introduced to the Employee Manual and spent time in the production room with Witzigman asking questions about the handling of donations; sanitation of donations, including whether it was done in a room with good ventilation (a concern because of her asthma) and what chemical solutions were used; if gloves were worn when handling donations, and if it was legal to re-sell used undergarments. *Id.* at 6–7.

Witzigman told Plaintiff that the Ilion Thrift Store where Plaintiff would be working sanitized donations,

including mattresses, on the store sales floor. *Id.* at 7. Plaintiff and Witzigman discussed how that would be problematic because of Plaintiff's asthmatic condition, with Plaintiff suggesting that spraying be done outside and that reasonable accommodations be made for her asthma during inclement weather, such as alerting her when spraying was being done in the process room. *Id.*

Plaintiff and Witzigman then began processing items, and Witzigman handed Plaintiff a mattress cover, which she was to price and hang for the sale floor. *Id.* When she unraveled it, Plaintiff noted that it was completely soiled with dried urine. *Id.* She quickly let go of the cover and asked for gloves. *Id* . She was given a very thin pair of plastic gloves that appeared vulnerable to rips and tears. *Id.* Plaintiff then began processing shoes, using ammonia and water to rid them of odors. *Id.*

On March 14, 2014, Plaintiff worked with Carmen in Witzigman's absence, and the two worked side-by-side processing used shoes and using guidelines for pricing, with Plaintiff's pricing being largely in sync with Carmen's. *Id.* When finished, Plaintiff was instructed by Carmen to read the Guide to Thrift Store and Donation Center Operations and Supplemental Guide for Supervisors, Managers, Assistant Managers and Senior Sales Associates. *Id.* at 7–8. Plaintiff took the opportunity to ask Carmen about contradictory policies and procedures and again addressed sanitary conditions and the handling of donations that might be tainted by bodily fluids, since she had not received a satisfactory answer to the question from Witzigman. *Id.* at 8. Carmen dismissed the inquiry and turned Plaintiff over to Vetter as she had to leave. *Id.*

 **\*4** The following day, Plaintiff immediately noticed a difference in Carmen's disposition. *Id.* Harrer was assigned by Carmen to accompany Plaintiff into the production room where he assigned her the task of sorting and pricing four bins of used footwear and left to speak with Carmen. *Id.* Plaintiff asked a co-worker if gloves were available, and she was directed to a box of small latex gloves that barely fit her hands. *Id.* The co-worker suggested Plaintiff put on a pair of mittens that had been donated. *Id.*

When Plaintiff completed her assigned task, she knocked on Carmen's door to let her know she was going to do other tasks, and Harrer responded in a condescending tone that he and Carmen were not finished talking, and Plaintiff should continue with other work. *Id.* Carmen again seemed a bit distant. *Id.* Plaintiff claims that Harrer's attitude, including demeaning responses to Plaintiff, created a hostile work place, and that Carmen's nonfeasance contributed to the hostile work environment. *Id.*

Toward the end of the work shift on her last day of training, Plaintiff worked with Witzigman, thanked everyone for their input during her training, and told Witzigman she would probably be calling her from Ilion if she had questions. *Id.* Although Witzigman wished Plaintiff luck, Plaintiff believes in hindsight that she was aware of Plaintiff's pending termination. *Id.*

Plaintiff reported to the Ilion store on March 18, 2014, and was welcomed by the assistant manager, who introduced her to employees, telling them Plaintiff was wonderful, and they would love having her as the new manager. *Id.* at 9. When Carmen arrived later to deal with shop lifting by an employee, she informed Plaintiff she needed to speak with her. *Id.* Carmen told Plaintiff that they were not comfortable with her remaining employed with them since she was "skittish" about handling donated items. *Id.* Carmen informed Plaintiff that based upon the manager's report of her training, Defendant Schoch did not believe Plaintiff to be suitable for the position of manager of the Ilion Thrift Store. *Id.* Plaintiff believes that her employment was terminated as a result of her having expressed concern about handling donated items and requesting gloves, as well as for stating that she would have all spraying done outside the Ilion store when she became manager because of her asthma. *Id.*

Plaintiff filed a complaint with the EEOC shortly after her termination, and the EEOC issued a right-to-sue letter on March 31, 2015. *Id.* at 10. Plaintiff alleges receipt of the right to sue letter on April 3, 2015. *Id.* at 11. Her Complaint was presented for filing on June 30, 2015. [1] *Id.*

[1]    Plaintiff, as required, filed this lawsuit under the ADA within ninety days of her receipt of the EEOC right-to-sue letter. *See* 42 U.S.C. § 12117(a); 42 U.S.C. ¶ 2000e–5(f)(1); *see also* *Tiberio v. Allergy Asthma Immun. of Roch.,* 664 F.3d 35, 37 (2d Cir.2011).

## IV. ANALYSIS

### A. Employment Discrimination Claim under Title I of the ADA

Under Title I of the ADA, an employer cannot "discriminate against a qualified individual on the basis of disability." 42 U.S .C. § 12112(a). To plead a Title I violation, a plaintiff must allege that (1) the defendant is subject to the ADA; (2) plaintiff is disabled within the meaning of the statute or perceived to be so by his or her employer; (3) he or she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (4) he or she was subject to an adverse employment action because of his or her disability. *See Brady v. Wal-mart Stores, Inc.,* 531 F.3d 127, 134 (2d Cir.2008).

 **\*5** The ADA defines a disabled individual as one who has "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) [is] regarded as having such impairment." 42 U.S.C. § 12102(1). Major life activities include but are not limited to caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2)(A). A major life activity also includes "the operation of a major bodily function." *Id.* Allegations of disability advanced under § 12102(1)(A) require of the plaintiff: "(1) a showing that he [or she] suffers from a physical or mental impairment; (2) identification of the supposedly-impaired major life activity; and (3) demonstration of substantial limitation of that activity."[2] *Troeger v. Ellenville Central School Dist.,* No. 1:10–cv–718 (GLS/DRH), 2012 WL 3643839, at * 1, 2012 U.S. Dist. LEXIS 119512, at * 3 (N.D.N.Y. Aug. 23, 2012), *aff'd,* 534 F. App'x 848 (2d Cir.2013).[3]

[2]  The Court finds that Plaintiff has failed to allege facts adequately describing the severity of her asthma and the limitations it imposes on her major life activities, a deficiency that should be corrected in the event an amended complaint is filed in the action.

[3]  Copies of all unpublished decisions cited herein will be provided to Plaintiff pursuant to *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (*per curiam* ).

### B. Retaliation Claim Under the ADA

Plaintiff claims that Defendants retaliated against her for expressing concerns about handling the donated items and requesting protective gloves, and for stating that she would have spraying of items done outside due to her asthma and inadequate ventilation inside the store. (Dkt. No. 1 at ¶ 6 and 9.) In order to state a claim for retaliation under the ADA, a plaintiff must allege facts showing that: "(1) he [or she] engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him [or her]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir.2002).

"The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir.2000). "Protected activity includes not only the filing of formal charges of discrimination, but also the informal protests of an employer's discriminatory practice such as, 'making complaints to management,' and the request for a reasonable accommodation." *Lupe v. Shineski,* No. 1:10–CV198 (MAD/ATB), 2012 WL 3685954, at * 19, 2012 U.S. Dist. LEXIS 120508, at *60 (N.D.N.Y. Aug.24, 2012) (citation and internal quotation marks omitted); *see also Sumner v. U.S. Postal Service,* 899 F.2d 203, 209 (2d Cir.1990) (protected activities include "making complaints to management.").

### C. Individual Liability

Plaintiff has sued Schoch and Carmen, individual employees of her former employer, the Salvation Army. In *Spiegel v. Schulmann,* 604 F.3d 72, 79 (2d Cir.2010), the Second Circuit held that there is no individual liability under the retaliation provision of the ADA. Although the Second Circuit has yet to explicitly address whether there is individual liability under Title I of the ADA, many district courts in this circuit, as well as other circuit courts, have held that individual defendants may not be held personally liable for alleged violations of Title I of the ADA. *See, e.g., Castro v. City of New York,* 24 F.Supp.3d 250, 259 (E.D.N.Y.2014) (acknowledging that many courts have concluded that the bar to individual liability in *Spiegel* extends to individual liability claims under Title I of the ADA and dismissing claims against individuals); *Doe v. Major Model Mgmt, Inc.,* No. 11 Civ. 6182(KBF), 2012 WL 763556, at * 7, 2012 U.S. Dist. LEXIS 32064, at * 19 (S.D.N.Y. Mar.9, 2012) ("The ADA applies to employers; it does not confer

Arcuri v. Schoch, Not Reported in F.Supp.3d (2015)
Case 6:18-cv-00736-GTS-TWD    Document 4    Filed 07/18/18    Page 20 of 32
2015 WL 5652336

individual liability."); *Carlson v. Geneva City School Dist.,* 679 F.Supp.2d 355, 378 (W.D.N.Y.2010) (actions against defendants in their individual capacities are not permitted under Title I of the ADA); *Fox v. State University of New York,* 497 F.Supp.2d 446, 449 (E.D.N.Y.2007) (there is no individual liability under Title I of the ADA) (citing *Garcia v. S.U.N. Y. Health Sciences Ctr. of Brooklyn,* 280 F.3d 98, 107 (2d Cir.2001); *see also Silk v. City of Chicago,* 194 F.3d 788 (7th Cir.1999) (supervisor cannot be held liable in his individual capacity in employment discrimination case under the ADA); *Román–Oliveras v. Puerto Rico Elec. Power Auth.,* 655 F.3d 43, 52 (1st Cir.2011) (Title I of the ADA addresses only the conduct of employers and does not impose liability on co-workers). Therefore, Plaintiff's Complaint fails to state a claim against Schoch and Carmen under the ADA.

**\*6** Plaintiff has not named her former employer, the Salvation Army, against whom she filed her EEOC complaint, as a defendant in this lawsuit. (Dkt. No. at 6.) Therefore, the Court recommends that Plaintiff be granted thirty days from the date the District Court files its order on this Court's Report–Recommendation within which to file an amended complaint naming the Salvation Army. [4] The Court further recommends that upon the expiration of the thirty days granted Plaintiff to file an amended complaint, the action be dismissed with prejudice as against Schoch and Carmen, whether or not Plaintiff has filed an amended complaint.

[4]    The Court recommends that in the event Plaintiff is granted leave to file an amended complaint against the Salvation Army, she be cautioned that any additional pleadings must comply with the requirements of Federal Rule of Civil Procedure 8; a pleading must contain "a short and plain statement of the claim," and "[e]ach allegation must be simple, concise, and direct." Fed.R.Civ.P. 8(a) (2), (d)(1). In addition, Plaintiff should be instructed to consider the requisite elements of claims under the ADA as discussed herein in drafting any amended complaint in this action.

## III. MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff has moved for appointment of counsel. (Dkt. No. 3.) However, a more fully developed record will be necessary before the Court can assess whether counsel should be appointed. *See Hendricks v. Coughlin,* 114 F.3d 390, 392 (2d Cir.1997).

**ACCORDINGLY,** it is hereby

**ORDERED,** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED;** and it is further

**ORDERED,** that Plaintiff's application for appointment of counsel (Dkt. No. 3) is **DENIED** without prejudice; and it is

**RECOMMENDED,** that Plaintiff be granted leave to file an amended complaint naming the Salvation Army as a defendant within thirty days from the filing of an order by the District Court on this Court's Report–Recommendation; and it is further

**RECOMMENDED,** that Plaintiff be cautioned that any additional pleadings must comply with the requirements of Federal Rule of Civil Procedure 8; and it is further

**RECOMMENDED,** that at the expiration of the thirty days granted Plaintiff to file an amended complaint, the action be dismissed with prejudice against Defendants Schoch and Carmen, whether or not Plaintiff has filed an amended complaint; and it is

**ORDERED,** that in the event Plaintiff files an amended complaint, the Clerk submit the amended complaint to this Court for initial review pursuant to 28 U.S.C. § 1915(e); and it is further

**ORDERED,** that the Clerk provide Plaintiff with a copy of this Order and ReportRecommendation, along with copies of all unpublished decisions cited herein in accordance with *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (*per curiam* ).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 5652336

**End of Document**                              © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 11265988
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andria BERGER, Plaintiff,
v.
NYS OFFICE FOR PEOPLE
WITH DEVELOPMENTAL
DISABILITIES, et al., Defendant.

6:16-CV-1277 (LEK/ATB)
|
Signed 11/08/2016

**Attorneys and Law Firms**

ANDRIA BERGER, pro se.

### ORDER and REPORT-RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge

**\*1** The Clerk has sent to the court for review a complaint, together with an application to proceed in forma pauperis ("IFP"), filed by pro se plaintiff Andria Berger. (Dkt. Nos. 1, 2).

## I. IFP Application

Plaintiff declares in her IFP application that she is unable to pay the filing fee. (Dkt. No. 2). This court agrees, and finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of

judicial resources. *Neitzke*, 490 U.S. at 327, 109 S.Ct. 1827; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555, 127 S.Ct. 1955). The court will now turn to a consideration of the plaintiff's complaint under the above standards, keeping in mind that pro se pleadings are interpreted to raise the strongest arguments they suggest. *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

## II. Facts

Plaintiff states that she is bringing this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. Although she has used a form specifically for Title VII cases, she also appears to allege "disability" discrimination. (Complaint ("Compl.") ¶ 6(F) ) (Dkt. No. 1). A claim for disability discrimination would be brought under the Americans With Disabilities Act, ("ADA"), 42 U.S.C. § 12101 et seq. Plaintiff seems to list several New York State statutes in the "factual" portion of her complaint. (Compl. "Facts" at 2) (Dkt. No. 1-1). Plaintiff states that she is raising "NY General Business Law 349" [1] as well as two Penal Law sections—NY Penal Law § 240.24 and 175.30. [2] (Facts at 2).

[1]    N.Y. Gen. Bus. Law § 349 is entitled "Deceptive acts and practices unlawful." The statute provides that the Attorney General has a right of action to enjoin persons or businesses that violate the statute and obtain any applicable restitution. *Id.* § 349(b). The

Case 6:18-cv-00736-GTS-TWD    Document 4    Filed 07/18/18    Page 23 of 32

statute also provides for a private right of action by someone aggrieved by the statute for damages up to $50.00. In its discretion, the court may increase the damages up to $1000.00.

2    Although plaintiff refers to this statute as "Reckless Endangerment," N.Y. Penal Law § 240.24 is Harassment in the Second Degree, and section 175.30 is Offering a False Instrument for Filing.

**\*2** Plaintiff's form-complaint indicates that the defendants' conduct was discriminatory based upon her sex, "disability," unequal terms and conditions of employment," retaliation, and "constructive discharge." (Compl. ¶ 6). The form-complaint also asks for the date on which the Equal Employment Opportunity Commission ("EEOC") issued plaintiff a "Right-to-Sue" ("RTS") letter. (Compl. ¶ 11). Plaintiff answered that she received the RTS letter "on or about August 2016," however, plaintiff has neglected to attach the letter to his complaint as indicated on the form-complaint. Thus, plaintiff's complaint is incomplete.

The Fact section of the complaint contains two subsections. First, plaintiff appears to have summarized her claims in the first two pages. (Facts at 1-2). The rest of the complaint includes additional details under the "cause of action" ("COA") headings. (Facts at 3-24). There are nine causes of action, and plaintiff has numbered the paragraphs of her COAs. Thus, the court will refer to the COAs with the paragraph numbers as assigned by plaintiff.

Plaintiff states that she has been working for New York State since 1994, without incident until recently. In 2005-2006, plaintiff transferred from a position with the New York State Office of Mental Health ("OMH") to a position with the New York State Office for People with Developmental Disabilities ("OPDD"). (Facts at 1). Plaintiff alleges that on August 29, 2015, defendant Lafountain "instructed the plaintiff to tend to a gender based work assignment, consequently denying the plaintiff ... her earned employment benefit with regard to seniority." (*Id.*) It appears that plaintiff is claiming that defendant Lafountain transferred plaintiff to work at a location other than her permanent work assignment [3] in violation of Title VII and various New York State laws and OPDD policies.

3    Plaintiff was apparently assigned to work at a group home on Benedict Road, while the allegedly discriminatory re-assignment was to a home on Church Street.

Plaintiff alleges that on September 1, 2015, defendant Lafountain breached numerous OPDD "policies and procedures, the collective bargaining, labor/management agreement and varying NYS laws to create ... work hardships for plaintiff." (Facts at 1-2). Plaintiff alleges that defendant Lafountain refused to discuss proper policies with plaintiff and retaliated against her. Plaintiff alleges that defendant Lafountain is guilty of "reckless endangerment," in violation of New York Penal Law § 240.24. (Facts at 2).

Plaintiff also claims that on November 5, 2015, defendant Bill Loya, the plaintiff's union representative "refused his duty to represent the plaintiff," in violation of New York State General Business Law § 349. (*Id.*) Plaintiff claims that both defendant Lafountain and defendant Loya lied to the New York State Division of Human Rights during its review of plaintiff's case on March 17, 2015, in violation of New York State Penal Law § 175.30. (*Id.*)

Finally, plaintiff alleges that she resigned due to unsafe and dangerous working conditions and claims that OPDD refused to "support a safe working environment for the plaintiff and the consumers in her care out of retaliation based on the formal complaints made by plaintiff and the intimate relationship that defendant Lafountain "shares with the Deputy Director who supervised her." (*Id.*)

Plaintiff raises the following causes of action:

1. Gender Discrimination in violation of Title VII. (Compl. ¶¶ 1-21).

2. Disability Discrimination by defendant Lafountain in violation of the ADA. (Compl. ¶¶ 22-38).

3 Retaliation by defendant Lafountain in violation of Title VII. (Compl. ¶¶ 39-66).

**\*3** 4. Violation of Penal Law § 260.24 by defendant Lafountain. (Compl. ¶ 67).

5. "Tort of Economical Unlawful Interference" by defendant Loya. (Compl. ¶¶ 68-80).

6. Violation of General Business Law § 349 by defendant Loya. (Compl. ¶¶ 81-86).

7. Violation of Penal Law § 175.30 by both defendants Lafountain and Loya. (Compl. ¶¶ 87-89).

8. Constructive discharge by defendant OPDD. (Compl. ¶¶ 90-114).

9. Violation of Labor Law § 191 by OPDD. [4] (Compl. ¶¶ 115-22).

[4]    At the end of this section of the complaint, plaintiff also alleges in one sentence that OPDD officials "collectively refused to acknowledge Mental Hygiene Law 16.35(3) (4)." (Compl. ¶ 122). This section of the New York Mental Hygiene Law is entitled "Developmental disabilities service quality improvement demonstration program." This section directs the Commissioner to establish a demonstration program to improve the quality of care for facility clients through the increase or improvement of direct care staff at the facilities. N.Y. Mental Hygiene Law § 16.35(b). The sections cited by plaintiff are in subsection (c), which provides that the Commissioner's eligible projects may include efforts to decrease staff turn-over through wage, employee benefit improvements, or other means. Section 16.35(c)(4) provides for "other efforts related to the recruitment and retention of direct care staff that will effect the quality of care at such facility." The court has interpreted plaintiff's statement at the end of her complaint as alleging that based on the facts as stated in the complaint, the defendants are not trying to improve the quality of care at the relevant facilities in violation of this statute. However, there is no indication that there is any private right of action for any "violation" of this statute. In fact, the beginning of subsection c states that the efforts of the Commissioner "may" include the following "projects."

### III. Title VII

#### A. Legal Standards

Title VII prohibits employers from discriminating against an individual based upon "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). At the pleading stage, plaintiff must allege "the essential elements of an employment discrimination claim." *Id.* (citing *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) ). The plaintiff must allege that she belongs to a protected class, suffered an adverse employment action, and that the adverse action occurred under circumstances that give rise to "an

inference of discriminatory intent." *Id.* (citing *Sanders v. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) ).

Title VII does not provide for individual liability, and the only proper defendant in a Title VII action is plaintiff's employer, OPDD. *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) (citing *Tomka v. Seiler Corp*, 66 F.3d 1295, 1313-14 (2d Cir. 1995), *abrogated on other grds. by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) ); *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004). The same is true for the ADA. *See Garibaldi v. Anixter, Inc.*, 407 F.Supp.2d 449, 450 (W.D.N.Y. 2006) (citing *Bliss v. Rochester City School Dist.*, 196 F.Supp.2d 314, 339 (W.D.N.Y. 2002) ). Although individuals may be liable for employment discrimination under certain sections of the New York Executive Law, [5] plaintiff has not made any state law claims under the Executive Law. [6]

[5]    *Sutera v. Rochester City School Dist.*, No. 11-CV-6057, 2014 WL 4245957, at *4-5 (W.D.N.Y. Aug. 26, 2014) (citations omitted).

[6]    Plaintiff has made other state law claims which will be discussed below.

**\*4** Thus, to the extent that plaintiff sues either defendant Lafountain or defendant Loyd under Title VII, those claims may be dismissed as against the individual defendants. Plaintiff may still allege that her individual supervisors engaged in discriminatory conduct, but the proper defendant is OPDD.

Plaintiff alleges that on August 29, 2015, Ms. Lafountain gave plaintiff an "unfavorable" work assignment "because" plaintiff was a woman. (COA ¶ 2). Plaintiff claims that the particular work assignment, which involved going to the Church Avenue location—a different group home than the one to which she was permanently assigned—resulted in male employees of lesser seniority obtaining "plaintiff's earned, seniority status." (COA ¶ 3). The rest of the paragraphs in the first COA are plaintiff's explanation of why she believes that the one assignment was discriminatory. However, it is clear from the complaint that plaintiff is complaining of only one allegedly discriminatory incident. Plaintiff states that, in the past, male employees were assigned to work at the Church Avenue location. (COA ¶¶ 11-14). Plaintiff also states that "[o]vertime opportunities to work

at the Church Ave. location before and after 8/30/15 were open to males and females equally." (COA ¶ 13). Plaintiff essentially disagreed with Ms. Lafountain's assignment and did not believe that the Church Ave. home needed another woman on that particular day. (COA ¶¶ 16-18).

Plaintiff states that Ms. Lafountain told plaintiff to "grieve" the issue, and plaintiff states that she complied by filling out a "CSEA grievance," documenting the "personal discrimination based on gender and the additional discrimination against a consumer...." (COA ¶¶ 19-20). Although the court has serious doubts about the plaintiff's claim, the court will recommend that her sex discrimination claim against OPDD proceed.

#### IV. Retaliation/Constructive Discharge

##### A. Legal Standards
Title VII protects an individual from retaliation. *Moore v. Greyhound Bus Lines*, No. 15-CV-5512, 2015 WL 6128874, at *2 (E.D.N.Y. Oct. 16, 2015). To state a claim for retaliation, the plaintiff must allege that he engaged in "protected activity by opposing an employment practice made unlawful under the relevant statute," that his employer was aware of plaintiff's protected activity, that the employer took an adverse employment action against the plaintiff, and that there was a causal connection between the adverse employment action and the protected activity. *Littlejohn v. City of New York*, 795 F.3d 297, 315-16 (2d Cir. 2015) (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) ); *Gordon v. New York City Bd. of Ed.*, 232 F.3d 111, 113 (2d Cir. 2000). Plaintiff need not establish a prima facie case of retaliation, but must at least allege facts that state a plausible claim for retaliation. *Chang v. City of New York Dep't for the Aging*, No. 11 Civ. 7062, 2012 WL 1188427, at *6, (S.D.N.Y. Apr. 10, 2012) (Rep't-Rec.) (citation omitted).

An employee is " 'constuctively discharged when his employer, rather than discharging [her] directly, intentionally creates a work atmosphere so intolerable that [she] is forced to quit involuntarily....' " *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003). Working conditions are "intolerable" when they are so difficult or unpleasant, viewed as a whole, that a "reasonable person in the employees situation would have felt compelled to resign." *Id.* at 152 (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996) ). *See also Monroe v. County of Orange*, No. 14-CV-1957, 2016 WL 5394745, at

*18 (S.D.N.Y. Sept. 27, 2016) (quoting *Green v. Brennan*, ––– U.S. ––––, 136 S.Ct. 1769, 1777, 195 L.Ed.2d 44 (2016) ).

##### B. Application
**\*5** Plaintiff alleges that, after she filed a grievance on August 30, 2015,[7] on September 1, 2015, Ms. Lafountain "left a series of unfavorable and dangerous work assignments for plaintiff to follow which Lafountain had pre-planned." (COA ¶ 39). Plaintiff alleges that on September 4, 2015, she received confirmation that the grievance had been received.[8] (COA ¶ 21). Plaintiff then states that on 9/1/15, upon hearing of these "egregious work instructions," plaintiff became "instantaneously filled with fear and anxiety about her state of affairs at work." (COA ¶ 64). Plaintiff states that she told her immediate supervisor that she was feeling ill and left work." (*Id.*) Plaintiff states that she immediately sought medical attention. (COA ¶ 65). She then sent a second grievance, "documenting the 9/1/15 retaliation." (COA ¶ 66).

[7]   August 30, 2015 was a Sunday.

[8]   It is unclear that Ms. Lafountain would have been aware of plaintiff's actual grievance on September 1, 2015 or anytime from August 29, 2015 until September 1, 2015. However, plaintiff does claim that Ms. Lafountain told plaintiff to file a grievance, and plaintiff told Ms. Lafountain that she was going to do so. (COA ¶ 19). Thus, for purposes of initial review, this court will assume that Ms. Lafountain was aware that plaintiff was going to file a grievance, alleging sex discrimination.

Plaintiff did not return to work after 9/1/15, and states that, during the second week of September, plaintiff asked defendant Loya how she could apply for a " 'Voluntary Reduction in Work Schedule.' " (COA ¶ 76). When plaintiff was told that she did not qualify for such a reduction, plaintiff asked for a part-time position outside of Ms. Lafountain's supervision. (*Id.*) Plaintiff claims that she reached out to a variety of OPDD officials to "halt" Ms. Lafountain's "retaliatory efforts." (COA ¶ 91). In October of 2015, plaintiff asked James Doddemeade, the OPDD Deputy Director if plaintiff could obtain part-time work outside of Ms. Lafountain's supervision. (COA ¶ 92). Although she was told that Mr. Doddemeade would look into the possibility, by October 25, 2015, she was "without

information" about any such transfer, and plaintiff was told to "call the 'staffing coordinator.' " (COA ¶ 93).

Plaintiff claims that she filed her verified complaint with the New York Human State Division of Human Rights on October 27, 2015. (COA ¶ 94). Plaintiff claims that she left several voice mails with the staffing coordinator, but no one returned her telephone calls. Plaintiff states that, on November 4, 2015, no one showed up for her scheduled grievance hearing. (COA ¶ 96). However, on November 9, 2015, defendant Loya called plaintiff to suggest "an employment possibility." (COA ¶ 97). Plaintiff agreed to the "prospect," and she agreed to provide a "return to work medical note for 11/21/15." (COA ¶ 97).

Plaintiff ultimately obtained work at another group home. (COA ¶ 108). Plaintiff states that she began work on December 2, 2015 at the new location in Clifton Park, New York. (COA ¶ 107). Plaintiff states that on December 24, 2015, she was again directed to work at an unfamiliar group home in East Greenbush, New York, an hour away from her home. (COA ¶ 108). Plaintiff claims that she was made to perform duties for which she was not qualified, and she sustained a "minor injury" attempting to lift a resident because plaintiff had never been trained to do so. (COA ¶ 109). Plaintiff claims that these assignments were in retaliation for her complaints of discrimination, and that OPDD managers and officials "supported retaliation and duress for the plaintiff." (COA ¶ 110). Plaintiff resigned on January 28, 2016, by sending in her "two week notice." (COA ¶ 111). Plaintiff seems to claim that these unfavorable assignments and the change in her working conditions were the result of her complaints about sex discrimination. Assignment to an unfavorable unit in certain circumstances has been held to be sufficient to satisfy the "adversity element" of a prima facie case of retaliation. *Harder v. New York*, 117 F.Supp.3d 157, 166-67 (N. DN.Y. 2015) (citations omitted).

**\*6** Based upon the facts as stated in the complaint, the court finds that plaintiff's retaliation and constructive discharge [9] claims survive initial review. However, this court makes no finding as to whether the claims would survive a properly supported motion to dismiss or one for summary judgment.

[9]    The "constructive discharge" claim is part of plaintiff's Title VII retaliation claim. *See Martin v. Citibank, N.A.*, 762 F.2d 212, 221 (2d Cir. 1985)

(discussing the standard for constructive discharge under both 28 U.S.C. § 1981 and Title VII).

## V. ADA

### A. Legal Standards

The ADA provides for protection against discrimination based upon disability. 42 U.S.C. § 12101 *et seq.* Title I of the ADA governs employment actions; Title II covers public services and programs; and Title III governs public accommodations. *Tennessee v. Lane*, 541 U.S. 509, 516-17, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004). The only section of the ADA that could conceivably apply to plaintiff's claims is Title II. 42 U.S.C. § 12182. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.*

### B. Application

In plaintiff's complaint, she alleges that due to her reassignment, a disabled resident of the group home, who is usually cared for by the plaintiff, was denied her "rehabilitation services on 8/30/15" in violation of a variety of statutes, including the ADA. (COA ¶¶ 22-38). The resident in question is not a plaintiff in this action, and Ms. Berger may assert the rights of another individual. It is well-settled that a person who has not been admitted to practice law may not represent anyone other than herself. [10] *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007). *See also* 28 U.S.C. § 1654. Plaintiff may not assert an ADA claim on behalf of another individual, particularly one who is not even a plaintiff in the action. Thus, plaintiff's attempt to raise ADA claims based on a resident's rights, may be dismissed with prejudice.

[10]    A limited exception exists if an individual appears for an estate in which there are no other beneficiaries or creditors. *See Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010). The exception is not applicable to this case.

## VI. New York Penal Law "Claims"

### A. Legal Standards

An individual plaintiff has no private right of action to enforce state criminal statutes and lacks the authority to institute a criminal investigation. *See Madden v. Abate*, 800 F.Supp.2d 604, 606-607 (D. Vt. 2011) (existence of

a criminal statute prohibiting certain conduct does not in and of itself create a civil cause of action that may be brought by the victim of that conduct); *Heickien v. U.S. Dep't of Homeland Sec.*, No. 10 Civ. 2239, 2011 WL 3841543, at \*15 (S.D.N.Y. Aug. 30, 2011) (Report-Recommendation) (citations omitted), *adopted by* 2011 WL 4442669 (S.D.N.Y. Sept. 23, 2011).

### B. Application

Plaintiff alleges that defendant Lafountain, "inspired by her retaliation," violated New York Penal Law § 260.40. (COA ¶ 67). Even if the court were exercising supplemental jurisdiction under 28 U.S.C. 1367(a),[11] plaintiff would state no claim under New York State Penal Laws against any of the named defendants. *See also Senese v. Hindle*, No. 11-CV-72, 2011 WL 4536955, at \*11-12 (E.D.N.Y. Sept. 9, 2011) (Report-Recommendation) (citing *inter alia Watson v. City of New York*, 92 F.3d 31, 36 (2d Cir. 1996) ) (absent guidance from state courts, federal courts are hesitant to imply private rights of action from state criminal statutes), *adopted by* 2011 WL 4529359 (E.D.N.Y. Sept. 28, 2011). Thus, to the extent that plaintiff is attempting to raise New York Penal Law claims against any defendant, they may be dismissed.

11    28 U.S.C. § 1367(a) provides that where the federal court has original jurisdiction, the court shall also have supplemental jurisdiction over state law claims that are "so related" to the claims over which the federal court has original jurisdiction, that the state law claims form "part of the same case or controversy." The court notes that it may decline to exercise jurisdiction under certain circumstances. 28 U.S.C. § 1367(c)(1)-(c)(4).

### VII. "Unlawful Interference" and NY General Business Law § 349

#### A. Legal Standards

**\*7**  New York State provides a tort law cause of action for "Intentional Interference with Another's Performance of His Own Contract."[12] *Italverde Trading, Inc. v. Four Bills of Lading*, 485 F.Supp.2d 187, 202-203 (E.D.N.Y. 2007) (citing inter alia Restatement (Second) of Torts Section 766A). This section provides that

> [o]ne who intentionally and improperly interferes with the performance of a contract between

another and a third person by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him.

*Id.*

12    Plaintiff refers to this as a "Tort of Economical Unlawful Interference." (Fifth Claim—COA ¶¶ 68-80). The court has interpreted plaintiff's complaint liberally to assert the tort that is closest to the claims that plaintiff is attempting to make.

As stated above, New York General Business Law § 349 prohibits deceptive acts and practices. In order to state a claim under this section, the plaintiff must show that the defendant's act, practice, or advertisement was "consumer-oriented," was "misleading in a material respect, and plaintiff was injured as a result. *Pelman ex rel. Perlman v. McDonald's Corp.*, 396 F.Supp.2d 439, 444 (S.D.N.Y. 2005).

#### B. Application

Both of these claims are state law causes of action. The court would have to exercise supplemental jurisdiction in order to resolve these causes of action. Leaving aside the issue of whether the claims would justify exercising supplemental jurisdiction as stated above, plaintiff does not state a claim under either law.

Plaintiff appears to claim that her union representatives, including defendant Loya did not represent her properly during her grievance procedures and lied during the Division of Human Rights review. (COA ¶¶ 68-86). Plaintiff mentions Charles Barley in her complaint, but he is not a defendant. Plaintiff claims that defendant Loya called plaintiff and told her that he was in receipt of her grievance and commented on its length, but agreed to "grieve the case on the plaintiff's behalf." (*Id.*) However, when plaintiff arrived at the scheduled time and place, no one from the union was there to meet her, and she was told that the hearing had been "cancelled," apparently due to a conflict with Ms. Lafountain's schedule of which plaintiff was not informed. Plaintiff claims that defendant Loya "chose to enact deceit verses [sic] his legal duty to represent plaintiff."[13] (COA ¶ 89).

13     This statement appears in one of the Penal Law sections of plaintiff's complaint, but the court is reading the complaint liberally and attempting to make sense of the allegations. Since General Business Law § 349 refers to deceptive practices, plaintiff's claim that defendant Loya acted "deceitfully," could be part of that claim.

Unfortunately, plaintiff does not state a claim for "unlawful interference" because plaintiff does not assert how this defendant interfered with plaintiff's ability to perform a contract as contemplated by the law. Plaintiff also fails to state a claim under General Business Law § 349, which is a consumer protection statute, and she does not allege that the defendant's actions were "consumer-related."

## VIII. Labor Law § 191

### A. Legal Standards

**\*8** Section 191 of the New York Labor Law provides for the "timeliness of payments." N.Y. Labor Law § 191. Section 191 guarantees that the wages that an employer and employee have agreed upon be paid in a "timely manner," according to the terms of the employment. *Perez White v. Advanced Dermatology of N.Y.*, No. 15 Civ. 4858, 2016 WL 4681221, at \*11 (S.D.N.Y. Sept. 7, 2016) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 545 n.1 (2d Cir. 2010) ). If employment is terminated, the employer must pay wages, "no later than the regular pay day for the pay period during which the termination occurred, as established in accordance with the provisions of this section." N.Y. Labor Law § 191(3). *Id.* Section 191 provides a remedy for claiming that wages were not "timely paid." *Id.*

### B. Application

Plaintiff alleges that although she provided a notice of resignation "effective" January 28, 2016, she did not receive her last pay check until April 4, 2016. (Compl. ¶ 118-19). The court notes that plaintiff's section 191 claim appears unrelated to her discrimination claim, and it is unclear whether the court would retain supplemental jurisdiction over this claim, but at this early stage of the case, the court will recommend that the claim proceed.

Plaintiff also claims that she requested payment for her "reassignment work," including milage reimbursement

which she has not received at all. The court notes that section 191 only provides a cause of action for wages that are not "timely paid." It does not provide a remedy for "unpaid" wages. *Perez White*, 2016 WL 4681221, at \*11 (citations omitted). Thus, plaintiff's claim for OPDD's failure to pay her for the reassignment work and milage may not be brought under section 191 and may be dismissed. Plaintiff alleges that while she worked for OPDD, she was "locked out of her computer" and was, therefore, denied the ability to "check her accrued vacation time against her the final wages that she received in April of 2016. (Compl. ¶ 121). There is no basis listed for plaintiff's allegations, and she may not bring this claim under section 191.

## IX. Opportunity to Amend

### A. Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B. Application

Most of the claims for which the court is recommending dismissal should be dismissed with prejudice. There is no better pleading which can revive Penal Law, General Business Law § 349, "unlawful interference," or ADA claims as plaintiff has stated them in this complaint. However, although the court is recommending dismissal as against defendant Lafountain, the court will recommend that the dismissal be without prejudice. If the court approves this recommendation, plaintiff should be given a limited period of time within which to submit an amended complaint for review in an effort to cure the defects in pleading as against defendant Lafountain. [14]

14     This would involve bringing New York State Human Rights Law claims against defendant Lafountain. N.Y. Exec. Law § 296. *See Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011) (citations omitted) (discussing individual liability under the Human Rights Law).

**\*9  WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**, and it is

**ORDERED**, that plaintiff submit her Right-to-Sue letter within fourteen (14) days of the date of this order, together with any objections to this court's recommendations as stated below, and it is

**RECOMMENDED**, that the complaint be **DISMISSED WITHOUT PREJUDICE FOR FAILURE TO STATE A CLAIM** as against defendant **LAFOUNTAIN**, and it is

**RECOMMENDED**, that the complaint be **DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM** as against defendant **LOYA**, and it is

**RECOMMENDED**, that plaintiff's **SECOND, FOURTH, FIFTH, SIXTH, and SEVENTH, CAUSES OF ACTION**, be **DISMISSED IN THEIR ENTIRETY WITH PREJUDICE**, and it is

**RECOMMENDED**, that if the district court adopts this Recommendation, the plaintiff's **FIRST, THIRD, EIGHTH, and NINTH CAUSES OF ACTION**, be allowed to proceed, and plaintiff be given thirty (30) days to file a proposed amended complaint [15] if she wishes

to attempt to cure the defects in pleading as against defendant Lafountain. At the end of the thirty days, or at the end of any extended period ordered by the court at plaintiff's request, this case may be returned to me for review and any appropriate Order regarding service of the complaint.

15      Any proposed amended complaint should be a complete pleading, should include only the claims that have been allowed to proceed in addition to any amended claims as against Ms. Lafountain under the New York Human Rights Law, and must supercede the original complaint.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Slip Copy, 2016 WL 11265988

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 1063474
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Regina GUESS, Plaintiff,
v.
Dr. Babak S. JAHROMI, Cynthia A.
Zink, Susan A. Moody, Defendants.

No. 6:17-CV-06121(MAT)
|
Signed 03/21/2017

**Attorneys and Law Firms**

Regina V. Guess, Rochester, NY, pro se.

**DECISION AND ORDER**

HON. MICHAEL A. TELESCA, United States District
Judge

**I. Introduction**

 **\*1** Plaintiff Regina Guess ("plaintiff"), proceeding *pro
se*, has requested permission to proceed *in forma pauperis*
pursuant to 28 U.S.C. § 1915. The Court has reviewed
plaintiff's submissions in connection with her motion
to proceed *in forma pauperis*, finds that she meets the
statutory requirements, and therefore grants her request
to proceed as a poor person. Pursuant to the requirements
of § 1915, the Court must conduct an initial screening
of plaintiff's complaint to ensure that the complaint has
a legal basis. For the reasons set forth below, plaintiff's
complaint is dismissed in its entirety with prejudice for
lack of subject matter jurisdiction. Plaintiff's motion for
appointment of counsel is denied as moot.

**II. Background**

The instant action is the third in a series of *pro
se* actions plaintiff has filed in relation to her
former employment with the University of Rochester
Medical Center ("URMC"), where she worked as a
radiologist from approximately October 2008 through
June 2010. Plaintiff's first action, which alleged claims
of discrimination and retaliation in violation of the
Americans with Disabilities Act ("ADA"), was dismissed
by this Court on August 17, 2015, in a Decision and

Order granting defendant URMC's motion for summary
judgment. See Guess v. Univ. of Rochester, 2015 WL
4891377, \*1 (W.D.N.Y. Aug. 17, 2015), reconsideration
denied, 2015 WL 5824854 (W.D.N.Y. Oct. 6, 2015),
appeal dismissed (2d Cir. 15-3325) (Dec. 30, 2015) (Guess
I).

Plaintiff's second action, which she filed on September 19,
2016, alleged claims of fraudulent concealment, breach
of contract, and medical malpractice against several
defendants, who were employed at the URMC during
the time frame relating to the events at issue in plaintiff's
previous lawsuit. The Court dismissed that action for
lack of subject matter jurisdiction on October 20, 2016.
See Guess v. Jahromi, No. 6:16-CV-06637 (MAT),
Doc. 8 (October 20, 2016) (Guess II). Specifically, the
Court rejected plaintiff's asserted basis of supplemental
jurisdiction, finding that because the Court lacked original
jurisdiction over any of the matters asserted in the Guess
II complaint, the Court therefore had no supplemental
jurisdiction to hear the case. On November 15, 2016, the
Court denied plaintiff's motion for reconsideration and
for permission to file an appeal to the Second Circuit
Court of Appeals, finding that any appeal would not
be taken in good faith. See Guess v. Jahromi, 2016 WL
6695875, \*2 (W.D.N.Y. Nov. 15, 2016) (Guess III).

Plaintiff's instant complaint is alleged against three
defendants, all of whom were named personally in Guess
II. Reading the complaint liberally, plaintiff attempts
to state two causes of action. In the first cause of
action, which plaintiff variously describes as "fraud,"
"concealment," or "Title VII Civil Rights ... Employment
Discrimination," plaintiff alleges that the defendants
caused her "manifest injustice" in discriminating against
her in the course of her employment, that they falsified
statements, and that they caused her "loss of personal
missing property." Doc. 1 at 4. Her second cause of
action alleges, vaguely, that the defendants deprived her
of "personal missing property" through a "conspiracy of
fraud." See doc. 1 at 4-5. It is unclear what "personal
property" plaintiff refers to, however this claim appears
related to her repeated allegation, in both of her prior
suits, that due to some concealment of her medical
record the defendants somehow deprived her of medical
treatment.

**III. Standard of Review**

**\*2** Section 1915 requires the Court to conduct an initial screening of complaints filed by civil litigants proceeding *in forma pauperis*, to ensure that the case goes forward only if it meets certain requirements. "[T]he court shall dismiss the case at any time if the court determines that ... the action ... is frivolous or malicious; ... fails to state a claim on which relief may be granted; or ... seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)—(iii).

"[T]he issue of '[f]ederal subject matter jurisdiction may be raised at anytime during litigation and *must* be raised *sua sponte* when there is an indication that jurisdiction is lacking.' " English v. Sellars, 2008 WL 189645, \*2 (W.D.N.Y. Jan. 18, 2008) (addressing complaint at screening stage pursuant to § 1915) (quoting Hughes v. Patrolmen's Benevolent Assoc. of the City of New York, Inc., 850 F.2d 876, 881 (2d Cir. 1988), cert. denied 488 U.S. 967)) (emphasis added). Even at the screening stage, therefore, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) (per curiam); see also Billard v. Rockwell Int'l Corp., 683 F.2d 51, 57 (2d Cir. 1982) (denial not abuse of discretion where plaintiff had "access to full discovery" in a related case).

**IV. Discussion**

As in Guess II, plaintiff's instant complaint acknowledges that her claims are related to her prior employment discrimination suit. Reading her complaint liberally, she appears to assert grounds of both original jurisdiction based on a federal question as to a Title VII employment discrimination claim and supplemental jurisdiction as to related state-law tort claims. Thus, plaintiff ostensibly asserts that her state-law claims should be heard in this case because of the existence of original jurisdiction on the Title VII claim.

Initially, the Court notes that plaintiff's complaint fails to state a valid Title VII employment discrimination claim. A plaintiff alleging a Title VII case must allege that "(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." Liebowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009). Plaintiff, however, states no supporting facts other than to allege that the defendants "caused

[her] manifest injustice" in the course of her employment for URMC. Plaintiff's conclusory allegation of a Title VII violation appears to be a vehicle for bootstrapping jurisdiction of her related, state-law claims, which were previously dismissed by this Court in Guess II.

To the extent that plaintiff attempts to frame her former ADA claim now as a Title VII claim, such a claim cannot go forward because principles of res judicata, or claim preclusion, bar such a claim. "[C]laims premised upon 'new legal theories do not amount to a new cause of action so as to defeat the application of' res judicata." Tompkins v. Local 32BJ, SEIU, 2012 WL 1267876, \*8 (S.D.N.Y. Apr. 12, 2012) (quoting Ningbo Prods. Imp. & Exp. Co., Ltd. v. Eliau, 2011 WL 5142756, \*9 (S.D.N.Y. Oct. 31, 2011)); see also Cieszkowska v. Gray Line N.Y., 295 F.3d 204, 206 (2d Cir. 2002) (affirming district court order dismissing complaint as barred by *res judicata* pursuant to 28 U.S.C. § 1915, where the complaint stated employment discrimination as a new legal theory but "focused on essentially the same facts as those asserted in her first federal complaint").

**\*3** "To establish claim preclusion [or res judicata], a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Businesses for a Better N.Y. v. Smith, 2010 WL 3703693, \*3 (W.D.N.Y. Sept. 16, 2010) (citing Monahan v. New York City Dep't of Corr., 214 F.3d 275, 284-85 (2d Cir. 2000)). Here, the elements are met. Plaintiff's ADA claim was finally decided on the merits by the Court's Decision and Order dated August 17, 2015. See Guess I. Nothing prevented plaintiff from bringing a Title VII claim along with the ADA claim in Guess I, which claim would have centered on the same facts. Therefore, the Court concludes that to the extent that plaintiff attempts to plead a claim of Title VII employment discrimination, that claim is precluded due to the Court's decision in Guess I.

The Court therefore lacks original jurisdiction over any alleged Title VII claim because this claim is barred by the doctrine of res judicata. [1] Accordingly, to the extent that this complaint raises state law claims involving fraudulent concealment, breach of contract, or medical malpractice, those claims are dismissed because, for the reasons stated

2017 WL 1063474

in <u>Guess II</u>, the Court cannot exercise supplemental jurisdiction where no original jurisdiction lies.

1    The Court declines to grant plaintiff leave to amend because, considering the history of this case, to do so would likely be unproductive. See <u>Ruffolo</u>, 987 F.2d at 131; <u>Billard</u>, 683 F.2d at 57.

**V. Conclusion**

For the reasons stated above, plaintiff's motion to proceed *in forma pauperis* (doc. 2) is granted, plaintiff's complaint (doc. 1) is dismissed in its entirety with prejudice, and plaintiff's motion requesting appointment of counsel (doc. 3) is denied as moot. For the same reasons as stated in <u>Guess III</u>, 2016 WL 6695875, at *1-2, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Decision and Order would not be taken in good faith. The Clerk of the Court is directed to close this case.

ALL OF THE ABOVE IS SO ORDERED.

**All Citations**

Slip Copy, 2017 WL 1063474

---

**End of Document**    © 2018 Thomson Reuters. No claim to original U.S. Government Works.